May v. North Hudson County Railway Co.

CHARLES G. ROCHAT, ADMINISTRATOR OF JOHN MAY, DECEASED, DEFENDANT IN ERROR, v. THE NORTH HUDSON COUNTY RAILWAY COMPANY, PLAINTIFF IN ERROR.

1. If the trial court erroneously refuses to nonsuit the plaintiff for want of evidence of the defendant's responsibility, and exception is thereupon sealed, and the defect in proof be not subsequently remedied, error may be assigned upon the exception and the judgment may be reversed.

2. It is no evidence of negligence in a driver of a horse car that he whipped a pair of horses when about to start a car full of passengers, unless there appears to be something unusual in the manner of his whipping them.

On error to the Supreme Court.

For opinion of Supreme Court, see 19 *Vroom* 401.

For the plaintiff in error, *J. C. Besson* and *H. C. Pitney*.

For the defendant in error, *M. T. Newbold* and *G. Collins*.

The opinion of the court was delivered by

DIXON, J.   On September 1st, 1884, John May was injured by a horse car of the defendant, and subsequently brought suit in the Hudson Circuit for the resulting damages. He there recovered judgment, which was afterwards affirmed in the Supreme Court on writ of error, and is now in this court for review.

The principal assignment of error is based upon an exception to the refusal of the Circuit to non-suit the plaintiff at the trial for want of proof of negligence on the part of the defendant.

This assignment seems to have been deemed unavailable in the Supreme Court, because, after the non-suit was refused, the defendant introduced evidence tending to show how the in-

jury was occasioned, and did not subsequently renew the motion or ask the court to instruct the jury to find for the defendant on this ground.

But this idea is not in accord with the settled doctrine and practice of this court. At least, since the *Central R. R. Co.* v. *Moore*, 4 *Zab.* 824, exceptions of this nature have been constantly regarded as properly sealed, and judgments have thereupon been affirmed and reversed. *N. J. R. R. & T. Co.* v. *West*, 4 *Vroom* 430; *N. J. Express Co.* v. *Nichols*, 4 *Vroom* 434; *D., L. & W. R. R. Co.* v. *Toffey*, 9 *Vroom* 525; *Penna. R. R. Co.* v. *Righter*, 13 *Vroom* 180; *D., L. & W. R. R. Co.* v. *Dailey*, 8 *Vroom* 526.

The objection made to the practice is that after the exception is allowed the defendant may have supplied the defect in proof complained of, and although such supplemental evidence ought to prevent the reversal of the judgment, yet it would not theoretically, and if the defendant insisted on his legal right to have the bill sealed immediately upon the refusal, could not actually be embodied in the bill. But the objection is without substance. The bill is never, in practice, sealed until all the testimony is put in, and therefore the trial court is able to refuse to affix its seal unless all the pertinent evidence is set forth, and the appellate court will examine all the testimony before it to see whether the defect is remedied. *Perth Amboy Manuf. Co.* v. *Condit*, 1 *Zab.* 659; *D., L. & W. R. R. Co.* v. *Dailey*, 8 *Vroom* 526. Even if the bill had been sealed at once upon the refusal, the trial court might justly strike that bill from its records, because it did not fully present the grounds on which the question raised ought to be decided. A similar objection might be urged against the reversal of a judgment for the improper admission of a document insufficiently proved, since due proof might afterwards, in the trial, have been produced; but such reversals do take place when the proper proof is not added; and when it is, the error is disregarded. Practically, no difficulty results from these rules in the administration of the law. The powers of

the courts are ample to ensure their use for the furtherance of justice only.

The assignment of error on this exception should therefore be considered.

The testimony most favorable to the plaintiff tends to prove that on September 1st, 1884, toward evening, John May stood smoking on the right side of the front platform of a horse car belonging to the defendant. He was directly behind the brake, facing it, with his back against the front of the car, and holding the hand-rail behind him with his left hand. He was about thirty-five years of age, in good health, and accustomed to ride on the platform of cars, and had taken the position above described when he boarded the car, a few moments before the accident. The car was full of passengers, five or six of them being on the front platform, and was drawn by two horses. The track was straight and the grade about level. Under these circumstances, the driver stopped, or almost stopped, the car for a lady to alight, and when she was off he whipped up his horses, and although Mr. May saw that done, yet not being prepared for it, as he says, the sudden jerk threw him off the platform and he was injured. The question is whether this testimony indicates, directly or inferentially, any negligence on the part of the company's driver.

Certainly, it is not improper to whip up a pair of horses when they are required to start a car loaded with people, unless there is something extraordinary about either the horses or the whipping. Nothing extraordinary is asserted by the witnesses; but it is claimed that something of the kind may be inferred from the other statements that the car gave a sudden jerk and Mr. May was thrown off.

There are several considerations which render such an inference unreasonable, if not impossible.

First. Mr. May, the only witness who testified to the whipping, did not intimate that it was severe, and no witness spoke of anything unusual in the behavior of the horses. This,

under the circumstances, is tantamount to affirmative evidence that both were ordinary.

Secondly. Some sudden jerk was only a normal consequence of the effort of two horses to start a car full of passengers, to which the horses were attached by loose traces, and in this case it cannot be presumed that the jerk was attended by a great and instantaneous increase of speed, because the strength of the horses would not be able to impart that to such a load. As Mr. May saw that the start was about to be made, he should have been prepared for the jerk which it would necessarily occasion.

Thirdly. The statement that Mr. May was thrown off seems unfitted to afford any indication of the character of the driver's act, for it is not conceivable how whipping the horses could cause such a movement as would throw Mr. May off the car from the position in which he stood. Every movement so induced must have been accompanied by only a moderate increase of speed, and must also have been in a straight line forward, and its effect on Mr. May could only be to incline him backward against the front of the car where he was already leaning, steadying himself with his left hand upon the rail. Such a movement would have no tendency either to loosen his grasp or to hurl him sideways off the platform. If, therefore, while standing in the position which he describes, he was thrown with the violence and in the direction to which he testifies, there must have been some other cause than the sudden jerk of the car which the whipping of the horses occasioned.

Hence, when we seek in the evidence for some ground on which to base a rational inference that the driver's *manner* of whipping the horses evinced a want of due regard to the safety of the passengers, we are unable to find it, and so are left to the bare fact of whipping to support the charge of negligence. That fact alone affords no evidence of negligence in this case.

The non-suit, when asked for, should have been granted.

No proof of the defendant's negligence was afterwards sup-

plied. On the contrary, the testimony subsequently adduced made it quite clear that the accident was caused by circumstances which the defendant's agent had no opportunity to control.

The judgment should be reversed.

*For affirmance*—None.

*For reversal*—The Chancellor, Depue, Dixon, Magie, Reed, Scudder, Brown, Clement, Cole, McGregor, Paterson, Whitaker. 12.